### TEXAS EMPLOYERS' INS. ASS'N v. HARDY.

### No. 1418.

Court of Civil Appeals of Texas. Eastland.
March 22, 1935.

Rehearing Denied April 12, 1935.

Lawther, Cox & Cramer and Shelby S. Cox, all of Dallas, for appellant.

Stinson, Hair, Brooks & Duke, of Abilene, and Smith & Smith, of Anson, for appellee.

HICKMAN, Chief Justice.

The appeal is from a judgment setting aside and holding for naught a compromise settlement agreement between the parties, together with an order of the Industrial Accident Board approving same. In November, 1931, appellee sustained an injury in the course of his employment while working for the Sweetwater Cotton Oil Company, by being struck on the back of his head by a falling iron pulley, weighing thirty-five or forty pounds. He continued in his employment until the close of the season a few months thereafter, but in one or two months after the accident he had what he described as a "spell." It was, in fact, a convulsion. After the close of the season in Sweetwater, he procured similar employment in Henderson, Tex., and shortly thereafter had another convulsion, at which time he called in Dr. Shaw, of Henderson, to treat him. Dr. Shaw diagnosed his trouble as traumatic epilepsy, probably produced by the blow received at Sweetwater. These attacks becoming more frequent, he employed an attorney at Henderson for the purpose of procuring compensation from appellant, who was the insurance carrier for the Sweetwater Cotton Oil Company, at the time the injury was sustained. Later, Paul Price, adjuster for appellant, called on appellee and arranged for him to go to Tyler to be examined by Dr. C. E. Willingham.

After the examination was made by Dr. Willingham, the appellee, his attorney, and Price met in the attorney's office in Henderson and agreed on a compromise and settlement of the claim, by the terms of which appellant was to pay appellee $575. This agreement was submitted to the Industrial Accident Board, which raised the amount of the settlement to $700. This amount was paid by appellant to appellee and his attorney, after which an order was entered by the board approving the settlement.

The present suit was brought for the purpose of setting aside this settlement agreement and the order of the board approving same on the ground that they were procured by fraud. The case was submitted to a jury on special issues, and upon its answers thereto judgment was rendered setting aside the agreement and order, from which this appeal was prosecuted.

It is charged in the petition that Dr. Willingham advised appellee "that his injury was only trivial and did not amount to but very little, and that it would not interfere with his work, and that he could not see any connection between the condition of the plaintiff's head and the injury received at the oil mill at Sweetwater." It is also charged that at the time the settlement agreement was made appellant's adjuster, Price, exhibited to appellee a letter written by Dr. Willingham to appellant advising appellant that appellee was not seriously injured, and that his condition would not interfere with his work. It is charged that these representations on the part of Dr. Willingham were each and all false; that they were made for the purpose of inducing appellee to enter into the settlement agreement; that he believed them to be true, and relying thereon, was caused to make the settlement, which he would not have otherwise made.

Twenty-one issues were submitted to the jury, by its answers to which it determined that Dr. Willingham represented to appellee that his injuries were trivial; that he advised appellee that such injuries would not materially interfere with him in performing manual labor; that each of these representations was false; that they were made for the purpose of inducing appellee to make the compromise agreement; that appellee believed and relied upon them, and was thereby induced to sign the agreement. The jury further found that appellee relied upon statements made in a letter written by Dr. Willingham to appellant with reference to his physical condition; that such statements

were false, were written for the purpose of inducing him to sign the compromise agreement, and he was induced thereby to sign same. The jury further found that appellee, in making the settlement, did not rely upon the statements of Dr. Shaw, his own physician.

It is evident that all of the foregoing findings were consistently favorable to appellee's contention, but, beginning with special issue No. 15, a different situation is presented by the findings. By its answers to special issues Nos. 15 and 16, the jury found that at the time appellee signed the compromise agreement he believed his injuries were slight and did not know that he had a depressed fracture of the skull. In answer to special issues Nos. 17 and 18, it found that at the time he signed the agreement he believed that his injury of November, 1931, had caused the depressed fracture of his skull, and that his depressed fracture caused his epilepsy. In answer to issue No. 19, it found that at that time appellee believed he would have to have an operation on his skull. In answer to issues Nos. 20 and 21 it found that appellee's attorney advised him to enter into the compromise settlement, and that he relied upon that advice in making the same.

██ It is presented that these issues are in irreconcilable conflict. It is not deemed necessary to cite authorities in support of the proposition that a valid judgment cannot be rendered on jury findings which are in irreconcilable conflict upon material issues. Neither is it deemed necessary to cite authorities in support of the propositions that, before a compromise agreement can be rescinded upon the ground of fraudulent representations in its procurement, it must be shown that the plaintiff believed the representations to be true. The most closely contested issue of fact upon the trial was whether appellee believed and relied upon the alleged representations and advice of Dr. Willingham. It is the contention of appellant that the record shows, as a matter of law, that he did not do so, and that, for that reason, judgment should be here rendered that appellee take nothing. While we have concluded, after a careful study of the entire statement of facts, not to render judgment here in favor of appellant,

██

still we recognize that the showing made by appellee on that question is not satisfactory. In that condition of the record, the importance of a clear finding on that issue is apparent.

██ The jury found that at the time appellee entered into the compromise agreement he believed the statements of Dr. Willingham, relied thereon, and was induced thereby to execute the agreement; that he did not rely upon the statements of his own physician, Dr. Shaw; that at that time he believed his injury was slight, and did not then know than he had a depressed fracture of his skull. It then found that at that time he believed the injury suffered at Sweetwater caused the depressed fracture of his skull; that his depressed fracture caused his epilepsy; and that he would have to have an operation on his skull.

We cannot reconcile these findings. If appellee believed at the time he entered into this compromise agreement that he had a depressed fracture of his skull; that this had caused his epilepsy; and that an operation on his skull was required, he did not believe that his injury was slight or trivial. No one could possibly regard an epileptic condition brought about by a depressed fracture of the skull, necessitating an operation thereon, as a slight or trivial injury. An operation on the skull is not slight or trivial, but a most serious matter. Neither is there anything slight or trivial about an epileptic condition. If appellee believed these things, he could not at the same time have believed the alleged representations of Dr. Willingham.

It is our duty to harmonize findings if possible to do so, and we have made an effort to find some reasonable basis in the pleadings and testimony upon which these issues could be harmonized, but have been wholly unable to discover such basis. They clash as surely as "he did" clashes with "he did not," and the clash is with respect to a material inquiry essential to support a judgment of cancellation for fraud.

Because of the conflicts in the findings of the jury, the judgment has no proper support in the verdict and same will, therefore, be reversed and the cause remanded.